IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

NORFOLK SOUTHERN RAILWAY
COMPANY,

    Plaintiff,

v.                                           Civil Action No. 7:16-cv-00176-GEC

CITY OF ROANOKE, a Virginia
Municipality,

    Defendant.

## (CORRECTED) PLAINTIFF'S MEMORANDUM IN SUPPORT
## OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Norfolk Southern Railway Company ("Norfolk Southern") submits the following in support of its motion for preliminary injunction filed with this memorandum.

## INTRODUCTION

In this action Norfolk Southern requests from this Court injunctive relief prohibiting Defendant City of Roanoke ("Roanoke") from collecting a tax called Roanoke's "storm water utility fee" to the extent that the amounts sought to be collected are discriminatory in violation of the federal anti-tax discrimination statute protecting railroads from discrimination in state and local taxation.

After 15 years of study, Congress enacted the statute now codified at 49 U.S.C. Sec. 11501 ("Sec. 11501"). The provisions of Sec. 11501 are the basis of this action. Sec. 11501 was enacted as a part of the Railroad Revitalization and Regulatory Reform Act of 1976 ("4-R Act") and became effective on February 5, 1979, three years after enactment.

1

At the time of enactment, the financial condition of the nation's railroad industry, particularly in the Northeast and Midwest, was grim. All major Northeastern railroads had filed for relief under the Bankruptcy Act, beginning in 1970 with the Penn Central, a large carrier formed in 1968 by the merger of the Pennsylvania Railroad and the New York Central. Two major Midwestern railroads had filed or were about to file for bankruptcy protection, namely the Rock Island (Chicago, Rock Island & Pacific) and the Milwaukee Road (Chicago, Milwaukee, St. Paul & Pacific). Congress was determined to take positive steps to restore the railroad industry to health financially.

Sec. 11501 was a key component of this effort. During its 15 years of considering anti-tax discrimination, Congress determined that railroads had long been the victims of discrimination in taxation by state and local governments. The Senate Committee on Commerce, reporting favorably on a bill that was a predecessor to Sec. 11501, stated in its report:

> Unfortunately, interstate carriers, especially railroads, are easy prey for State and local tax assessors. Railroads, oil pipelines, and other interstate carriers are nonvoting, often nonresident, targets for local taxation, and cannot easily remove their right-of-way or terminals. While all interstate common and contract carriers are subject to discriminatory tax practices, and included in S. 2289, there is no doubt that the railroad industry suffers most from the burdens which the bill would remove.

Senate Rpt. No. 91-630, 91st Cong. 1st Session, p. 3. Other congressional reports reached the same conclusion.

Thus, Sec. 11501 was enacted as a major step in providing financial relief for a railroad industry on the brink of financial collapse.

Sec. 11501 consists of two distinct parts. In Subsections (b)(1)–(3), the statute is directed exclusively to the ad valorem property tax, the tax that was the focus of the proposed statute during the 15 years of legislative history. But near the end of its consideration of the need for

relief from discriminatory taxes, Congress added a second part in Subsection (b)(4), a broadly worded "catch-all" provision designed to prevent discrimination by any form of taxation, not just ad valorem property taxation.

This action is a Subsection (b)(4) action brought under the provisions of Sec. 11501 that prohibit states and subdivisions of states from ". . . [imposing] another tax that discriminates against a rail carrier. . . ."

By explicit language contained in Sec. 11501, actions filed in federal courts under Sec. 11501 are exceptions to 28 U.S.C. Sec. 1341. The federal district court jurisdiction is mandatory and cannot be avoided even by the doctrine of abstention. Southern Railway Co. v. State Board of Equalization, 715 F.2d 522 (11th Cir. 1983); Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244 (4th Cir. 1993).

ARGUMENT

1. **The Roanoke storm water utility fee constitutes a tax within the meaning of 49 U.S.C. Sec. 11501(b)(4).**

The levy that is the subject of this action is characterized in the Roanoke ordinance as a "fee," not a tax. But the Court must look to federal law to determine whether a levy is a tax within the meaning of Sec. 11501. Its characterization by the taxing authority, or even under state law, is irrelevant. CSX Transp., Inc. v. Ga. State Bd. of Equalization, 552 U.S. 9 (2007) (principles of federal law control in construing Sec 11501). Whether a levy constitutes a tax under the law is controlled by the purpose of the levy. In this case the purposes of the levy are set forth in detail by ordinance. Those purposes are: 1) acquisition of property to construct, operate and maintain storm water control facilities; 2) administration of the facilities; 3) planning, design, engineering and construction of new and enlarged facilities; 4) public education on storm

3

water control, on development of watershed policy and for pollution control; and 5) facility operations and monitoring. Roanoke Ordinances, Sec. 11.5-5. In short, the levy that is the subject of this action is intended to fund a broad based public effort to establish and maintain a system to provide the entire city with control of storm water even to the extent of funding public education on the subject of storm water control.

Recently, the Seventh Circuit decided whether a levy constituted a tax under Sec. 11501(b)(4) in a case remarkably similar to this case. In Kansas City Southern Ry. Co. v. Koeller, 817 F.3d 368 (7th Cir. 2011), the court held that an annual levy on property owners within a levee district designed to provide Mississippi River flood protection for their property within the levee district was a tax within the meaning of Sec.11501(b)(4). The court concluded on this issue:

> In summary, the District's exaction, as the commissioners concede, raises general revenues, and its ultimate use is for the whole District. Unlike an assessment for a small project, the money raised is available for all the work of the District; no particular expenditure is tied to a particular benefit obtained by a specific taxpayer.

Plainly, the levy in this case under that holding is also an actionable tax under Sec. 11501.

2. **Roanoke's storm water control tax discriminates against Norfolk Southern in violation of Sec. 11501 in that Norfolk Southern must pay tax on all pervious property owned by it even though similarly situated taxpayers in Roanoke are not required to pay the tax on their pervious property.**

A year ago the United States Supreme Court decided Alabama Dept. of Rev. v. CSX Transp., Inc., 135 S.Ct. 1136 (2015), a Sec. 11501(b)(4) case. The result in that case is controlling in this case. The tax at issue was different, a sales and use tax, but the principles enunciated are directly applicable to the evidence in this case. The Court noted that it had

4

recently held in the same case when first appealed to the Supreme Court ". . . that a tax discriminates under subsection (b)(4) when it treats 'groups [that] are similarly situated' differently without sufficient 'justification for the difference in treatment. . . .'" (Citing CSX v. Alabama Dept. Of Revenue, 562 U.S. 277, 287 (2011)). Justice Scalia, speaking for the Court, then considered who would be the comparison class for Sec. 11501 purposes. Alabama argued that the comparison class should be limited to commercial and industrial taxpayers to be consistent with the dictates of (b)(1)-(b)(3) governing just ad valorem property taxes. The Court disagreed and stated:

> So, picking a comparison class is extraordinarily easy. Unlike under subsections (b)(1)-(b)(3), the railroad is not limited to all commercial and industrial taxpayers; all the world, or at least all the world within the taxing jurisdiction, is its comparison-class oyster. But that is not as generous a concession as might seem. What subsection (b)(4) requires, and subsections (b)(1)-(b)(3) do not, is a showing of discrimination - of a failure to treat similarly situated persons alike. A comparison class will thus support a discrimination claim only if it consists of individuals similarly situated to the claimant.

Alabama Dept. of Rev. v. CSX Transp., Inc., *supra* at p. 1142-143.

The evidence presented to this Court in support of this motion shows precisely who the comparison class is. The ordinance excludes from the levy all of the pervious portions of a property. In keeping with that limitation written into the ordinance, those responsible for administering the tax make no levy on lawns, no matter who is the owner of the lawn. *See* Declaration of Jonathan Farley (attached hereto as Exhibit 1) at ¶ 7. If it is green, it is excluded. But ballasted railroad property is also pervious. Ballasted railroad property is similarly situated to lawns. In fact, the science of storm water run-off shows that ballasted railroad property is at least as pervious and can even be more pervious than lawns. Farley Declaration ¶¶ 7. Notwithstanding this inescapable similarity, Roanoke chooses to treat railroad pervious property differently and less favorably than all other similarly situated property in the city in the

5

assessment of the storm water control tax. Because property covered with ballast represents the majority of the property owned by Norfolk Southern in the City of Roanoke, the City's decision is significant to Norfolk Southern. Declaration of Tyler M. Bius (attached hereto as Exhibit 2) at ¶ 5. It is important to note in this context that even the use of a narrow commercial and industrial comparison class would reach the same result - a finding of discrimination because of a difference in treatment. Grassy areas can be found in commercial and industrial properties as well as residential properties.

Norfolk Southern has in its declarations in support of the preliminary motion established that Roanoke has violated Sec. 11501(b)(4) and will continue to violate the statute unless enjoined by this Court.

3. **Because Norfolk Southern has shown that Roanoke has violated and will continue to violate Sec. 11501, Norfolk Southern is entitled to a preliminary injunction under the standard applicable to Sec. 11501 cases.**

As stated above, Sec. 11501 became effective in 1979, three years after passage of the statute. One of the first courts of appeal decisions construing the statute was <u>Atchison, Topeka & Sante Fe Ry Co. v. Lennen</u>, 640 F.2d 255 (10th Cir. 1981). The district court was reversed for abuse of discretion in failing to grant a preliminary injunction:

> It cannot be disputed that Sec. [11501] (c), read in the light of Sec. 306 of the 4-R Act and the legislative history and purpose of the Revised Interstate Commerce Act, is specific and clear in authorizing the district court to grant injunctive relief to prevent, restrain or terminate violations of Sec. [11501] of the Act. This court stated in <u>Shadid v. Fleming</u>, 160 F.2d 752, 753 (10th Cir. 1947), that in such case the discretion of the trial court in issuing or withholding an injunction is to be 'exercised in light of the objective of the Act.' The court is to be guided by the primary objectives of the statute involved, using public interest standards rather than private litigation requirements. <u>Hecht Co. v. Bowles</u>, 321 U.S. 321, 64 S. Ct. 587, 88 L. Ed. 754 (1944).

<u>Id.</u> at 258–59. The court then articulated the standard for entitlement for injunctive relief:

6

Moreover, it is not necessary that Railroads show that they will suffer irreparable harm if the injunction is denied. When the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to plaintiffs need not be shown. Referring expressly to Sec. 306 of the 4-R Act, the court in State of Tennessee v. Louisville & Nashville R.R. Co., 478 F. Supp. 1999 (M.D. Tenn. 1979), stated:

> Since Congress has expressly authorized federal courts to grant injunctive relief in furtherance of the express purposes of Section 306, it is not required that irreparable harm or inadequacy of legal remedies first be shown. United States v. City and County of San Francisco, 310 U.S. 16, 30, 60 S. Ct. 749, 757, 84 L.Ed. 1050 (1940).

All other courts of appeal that have considered the injunction standard issue have followed the Tenth Circuit. The Second Circuit stated:

> Traditionally and generally, "[a] preliminary injunction may issue if the plaintiff demonstrates irreparable harm and either a likelihood of success on the merits, or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor." Polymer Technology Corp. v. Mimran, 975 F. 2d 58, 61 (2d Cir. 1992) (citations omitted). We review the granting of a preliminary injunction for abuse of discretion. Id.
>
> However, a railroad seeking statutorily authorized injunctive relief from alleged tax discrimination under the 4-R Act is not governed by these equitable criteria. Burlington Northern R. Co. v. Department of Revenue of State of Wash., 934 F. 2d 1064 (9th Cir. 1991). For such a statutory injunction, a railroad need only demonstrate that there is 'reasonable cause' to believe that a violation of the 4-R Act has occurred or is about to occur. CSX Transp. v. Tennessee Bd. Of Equalization, 964 F. 2d 548, 551 (6th Cir. 1992).

Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 474, 478–79 (2d Cir. 1995).

Consequently, where the facts supporting a finding of discrimination appear at the outset to be as strong as they appear to be in this case, railroads have been consistently been successful in obtaining preliminary injunctive relief.

7

## CONCLUSION

Roanoke has singled out a railroad for discriminatory and less favorable treatment in administering its storm water utility fee. Because the fee constitutes a tax under the provisions of Sec. 11501 (b)(4), and because federal law expressly grants to railroads entitlement to injunctive relief to prevent discrimination by state and local governments in taxation, the preliminary injunction should be granted in this case.

Dated: April 13, 2016.                           Respectfully submitted,


                                          s/Gary A. Bryant
                                        Gary A. Bryant
                                        VSB No. 27558
                                        Counsel for NORFOLK SOUTHERN
                                          RAILWAY COMPANY
                                        Wilcox & Savage, P.C.
                                        440 Monticello Ave., Ste. 2200
                                        Norfolk, Virginia 23510
                                        757.628.5500 Telephone
                                        757.628.5566 Facsimile
                                        gbryant@wilsav.com

                                        Everett B. Gibson
                                        Tennessee BPR No. 7868
                                        22 N. Front St., Ste. 650
                                        Memphis, Tennessee 38103
                                        901.526.0412 Telephone
                                        901.525.8466 Facsimile
                                        everett@batemangibson.com
                                        (Motion *Pro Hac Vice* to be Filed)